# DOREMUS v. NATIONAL COTTON IMPROVEMENT COMPANY.

PROCESS; JURISDICTION; CORPORATIONS; PARTIES; REHEARING.

1. No jurisdiction is acquired by the service of process in the District of Columbia upon a foreign corporation, which has no office in the District for the transaction of business, and which is not doing business therein and which is not doing business anywhere, in the ordinary sense of the term, its purpose having been accomplished by

the issue of stock for the purchase of a patent, which formed the sole basis for its capitalization. (Citing *Ricketts* v. *Sun Printing & Pub. Asso.* 27 App. D. C. 222; *New York Continental Jewell Filtration Co.* v. *Karr*, 31 App. D. C. 459; *Ferguson Contracting Co.* v. *Coal & Coke R. Co.* 33 App. D. C. 159; *Mitchell Min. Co.* v. *Emig*, 35 App. D. C. 527; *Toledo Computing Scale Co.* v. *Miller*, 38 App. D. C. 237.)

2. An answer filed by the vice president of a foreign corporation not doing business in the District of Columbia will not have the effect to bring the corporation before the court, where it does not appear that he had any authority as such officer to enter its appearance or answer for it in the suit and where the answer would seem to have been filed in the interests of the plaintiffs. (Citing *Ambler* v. *Archer*, 1 App. D. Co. 94.)

3. The courts of the District of Columbia have no power to control the internal affairs or administer the corporate functions of a foreign corporation. (Citing *Clark* v. *Mutual Reserve Fund Life Asso.* 14 App. D. C. 154, 43 L.R.A. 390; *Barley* v. *Gittings*, 15 App. D. C. 427.)

4. A corporation is not a necessary party to a mere determination of the right to the ownership of its capital stock as between rival claimants.

5. That a defendant in a suit involving the ownership of corporate stock instigated the litigation as against his codefendants, desiring thereby to accomplish some purposes of his own, is not a valid reason why the plaintiffs should lose any substantial rights they may be entitled to under the allegations of their bill.

6. One against whom a decree determining the ownership of corporate stock is sought, is a necessary party to the suit, and until made a party is not in a position to concede that the ownership is not disputed.

7. On a motion for rehearing, nothing can be introduced from the record of another case.

No. 2403.      Submitted October 15, 1912.      Decided December 2, 1912.

HEARING on appeal by the plaintiffs from a decree of the Supreme Court of the District of Columbia dismissing a bill filed to obtain possession of corporate stock held in trust by certain of the defendants.      *Reversed.*

The COURT in the opinion stated the facts as follows:

This was a suit commenced by a bill filed by Willard D. Do-

remus and Addison G. Du Bois against the National Cotton Improvement Company, John Hays Hammond, Daniel J. Sully, Frank S. Bright, John P. Miller, and the United States Trust Company. It alleges that the National Cotton Improvement Company was incorporated under the laws of the State of Maine and has offices in the District of Columbia. That the defendants Hammond, Sully, Bright, and Miller are residents of the District of Columbia, and the United States Trust Company is a corporation created under the laws of said District.

That in December, 1909, the National Cotton Improvement Company was the sole owner of certain United States patents relating to a new cotton gin, which is known as the "Doremus cotton gin," of which the plaintiff Doremus was the inventor. That said patent and patent rights are of great value. That said corporation is capitalized at $1,500,000; the stock being divided $500,000 preferred, and $1,000,000 common. That there had been issued and was held by the defendant Miller, as trustee for plaintiffs and himself, about 96 per cent of all of the common and all of the preferred stock of said company, which was fully paid and nonassessable. The interest of said parties being plaintiff Doremus 50 per cent, plaintiff Du Bois 25 per cent, and defendant Miller 25 per cent.

That on December 29, 1909, an agreement was entered into by Miller on behalf of himself and plaintiffs, with the defendants Hammond and Sully, who purported to be acting for a syndicate, by the terms of which agreement Miller agreed to deliver to said syndicate all of the stock of the National Cotton Improvement Company held by himself as aforesaid, upon the payment of the sum of $37,500, said stock to be held by Hammond, until a corporation known as the General Cotton Securities Company be organized, and the defendants Hammond and Sully agreeing to cause to be incorporated a corporation known by that name, for the purposes of the promotion of the corporation and organization and the holding of stock and securities of other corporations engaged in the ginning, warehousing, and general development of the cotton business, which corporation should have a capitalization of $10,000,000 to be di-

vided into $7,000,000 common and $3,000,000 preferred; the said defendants Hammond and Sully agreeing, upon the organization of said company, to enter into a new contract with the new company, and to deliver to it the aforesaid stock of the National Cotton Improvement Company for $3,000,000 common and $3,000,000 preferred of the capital stock of the new company, fully paid and nonassessable, and to turn over to said Miller in behalf of himself and these plaintiffs, $1,000,000 of the common and $1,000,000 of the preferred stock so received. It was further provided that there should be created a voting trust to be composed of the defendants Hammond, Sully, and Bright, to whom all of the common stock should be turned over for the purpose of voting for five years; and in the event that such trust be formed the said Miller agreed on behalf of himself and plaintiffs to accept from said voting trust certificates of beneficial interest in the amount of the said common stock therein agreed upon; namely, $1,000,000. It was further provided that the preferred stock of the new corporation, which was to be delivered to defendant Miller, should be lodged with the syndicate for sale by the said syndicate, so as to net Miller and these plaintiffs the sum of $400,000 in cash; and that the defendants Hammond and Sully agreed to enter into an agreement with the new corporation to use their best endeavors to sell the $2,-000,000 preferred stock issued to them, and so much of the common stock which they received, so as to net the treasurer of the new corporation $1,600,000, the $2,000,000 preferred stock to be sold for the benefit of the corporation, and the $1,000,000 sold for the benefit of the defendant Miller and these plaintiffs, should be considered as one block, and out of the proceeds of said sale of each share of the preferred stock there should be paid to the said Miller the sum of $14.50 until the sum of $400,000 had been paid in full, and the balance should be paid into the treasury of the General Cotton Securities Company, until the $1,600,000 had been paid in full. It was provided that all deliveries of stock and payments of money may be made to Bright as Miller's representative.

Thereafter, in conformity with their obligation under said

agreement, Hammond and Sully caused to be organized under the laws of the State of Delaware the General Cotton Securities Company, with a capital stock of $10,000,000, divided into $3,000,000 common and $7,000,000 preferred. That the first meeting of said corporation was held on the 5th of January, 1910, in the City of Wilmington. Certain by-laws were adopted, and Ralph P. Buell, Chas. H. Stanton, and Warren N. Acres were elected directors. At said meeting there was presented to the stockholders a communication from Sully, acting in behalf of said syndicate, offering to enter into an agreement with said company to sell it the 96 per cent of the common and preferred stock of the National Cotton Improvement Company of Maine, and to pay into the treasury of the company, from time to time as the same is needed, the sum of $1,600,000, and accept in payment for the said stock and the said money $3,000,000 of the common and $3,000,000 of the preferred stock, to be issued as fully paid and nonassessable. This was accompanied by a copy of the agreement entered into by said defendants Sully and Hammond with the defendant Miller. Sully's proposition was accepted by a resolution passed by the board of directors, who were authorized to enter into a contract with him to carry out said agreeement.

That thereafter, on the 7th day of January, 1910, the first meeting of the board of directors of the General Cotton Securities Company was held at 42 Broadway, New York City, at which time the following officers were elected: Ralph P. Buell, president, Chas. H. Stanton, secretary and treasurer. At said meeting the proposition of said Sully was duly considered by the board of directors, who by a proper resolution passed accepted the same. The president and treasurer were authorized and directed to issue, in the name of said corporation and under its corporate seal, certificates of preferred stock to the value of $3,000,000 and common stock to the value of $3,000,000 in the name of Daniel J. Sully, and deliver the same to him upon the receipt of a certificate for the aforesaid 96 per cent of the stock of the National Cotton Improvement Company and the execution of an agreement by the said Sully to pay into the treasury

of the said Securities Company $1,600,000 when and as demanded; and a proposed instrument carrying out said agreement was then ordered spread upon the minutes of said corporation.

That on the 7th of January, 1910, the defendant Sully delivered to the treasurer of the General Cotton Securities Company the certificates of stock aforesaid, and received from the officers of the first-named company $3,000,000 of preferred and $3,000,000 of common stock of the General Cotton Securities Company. There was filed with said company a contract under seal by said Sully, acting for said syndicate, to pay, upon the company's demand, the sum of $1,600,000, without interest.

On the same date the actions of Sully were fully ratified by the members of the syndicate and there was entered into an agreement by and between the defendants Sully and Hammond and one Harris Hammond, Mont D. Rogers, and D. B. Atherton for the purpose of the sale of the preferred and common stock, and a division of the proceeds derived therefrom, and appointing the said Sully syndicate manager for the purpose of signing agreements for the sale of said stock and paying out the moneys received from such sale, etc.; and agreeing among themselves that the said Sully shall transfer the $3,000,000 preferred stock to be handled by the syndicate under their contracts with the defendant Miller, and in addition thereto $750,000 of the common stock held by the syndicate, all of which was to be deposited by the defendant Sully with such trust company that he may deem advisable; said common stock, however, to be subject to the voting trust agreement hereinbefore mentioned, all of the members of the said syndicate obligating themselves to use their best endeavors to market and sell said stock. On the following day, the 8th of January, 1910, the defendants Hammond and Sully entered into a partnership agreement to divide equally all of the profits received by virtue of their agreement made with the defendant Miller heretofore referred to, or the agreement made in behalf of the syndicate by the defendant Sully hereinbefore referred to.

On the 7th day of January, by agreement Hammond, Sully,

and Bright formed a voting trust and constituted themselves as trustees for said trust, and with the consent of the defendant Miller the $1,000,000 common stock of the General Cotton Securities Company, received by Sully for the benefit of the said Miller, was deposited by said Sully with said voting trust, under the terms and conditions as set forth in said trust agreement, and there was issued by said voting trust for said stock, trust certificates of beneficial interest of an equal amount to said John P. Miller, as trustee for the benefit of said Miller and these plaintiffs, in their respective interests as hereinbefore set forth. That, among other things, said voting trust agreement in substance provided that, upon the expiration of said trust, there should be delivered by the trustees to the holders of the trust certificates the stock represented thereby.

That after defendant Miller received the certificates of beneficial interest representing the said $1,000,000 of the common stock of the General Cotton Securities Company, he did not deliver to these plaintiffs their proportion of said certificates, but by mutual consent were allowed to remain in his possession as trustee, he at the time executing a declaration of trust, reciting that he had received from the voting trust certain trust certificates, which in the aggregate amounted to 10,000 shares, and that he had placed the same in escrow for a period of eighteen months in a safe-deposit box rented in the name of the defendants Sully and Bright. That the only certificate of which he was the beneficial owner was No. 11 for 2,275 shares of common stock. That certificates Nos. 4 for 2,550 and 5 for 1,500, 6 for 100, 7 for 100, 8 for 100, 9 for 100, and 10 for 100 shares were the property of the plaintiff Willard D. Doremus, and certificates Nos. 12 for 1,500, 13 for 500, 14 for 100, and 17 for 165 shares belonged to the plaintiff Addison G. Du Bois, and that the voting trustees were authorized and directed to transfer said common-stock certificates to the individuals thereto entitled.

Thereafter defendant Sully in behalf of the syndicate entered into a certain arrangement with the United States Trust Company, whereby said trust company agreed to act as trustees for

the syndicate in the disposition of the preferred stock of the
General Cotton Securities Company, and in the carrying out of
said defendants Hammond and Sully's agreement with the de-
fendant Miller.

And that there was turned over by Sully to the said Trust
Company the $1,000,000 preferred stock of the General Cotton
Securities Company, for the purpose of carrying out the agree-
ment of December 29, 1909, and said defendant the United
States Trust Company now has in its possession $750,000 of the
preferred stock of the General Cotton Securities Company,—
$500,000, which belongs to plaintiff Doremus, and $250,000
which belongs to plaintiff Du Bois.

That at a special meeting of the stockholders of the General
Cotton Securities Company held on the 7th of January, 1910,
by-laws of the company were amended by increasing the board
of directors from three to nine, and a meeting of a board of di-
rectors held immediately thereafter and at the same place ac-
cepted the resignation of Mr. Stanton as secretary and treasurer,
and Mr. Buell as president of the company, to take effect at the
close of the meeting, and filled the vacancies of the board of
directors by the election of the following gentlemen: John Hays
Hammond, Daniel J. Sully, Harris Hammond, George S. Gra-
ham, John P. Miller, Mont D. Rogers, D. B. Atherton. John
Hays Hammond was elected president, Daniel J. Sully, first
vice-president, Ralph P. Buell, secretary, and D. B. Atherton,
treasurer.

Some time thereafter the corporation removed its general of-
fices from New York to the city of Washington. Thereafter the
said syndicate endeavored to get capital interested in the enter-
prise. Through the defendant Sully certain New York, Boston,
and English capitalists were interested. In consequence it be-
came necessary to build a commercial gin for the purpose of dem-
onstrating to the interested capitalists the great commercial
value of the Doremus patent. That on the 18th of June, 1910,
the General Cotton Securities Company through its vice-presi-
dent, defendant Sully, entered into a contract with the Thomas-
Fordyce Manufacturing Company, of Little Rock, Arkansas, to

manufacture a gin according to the Doremus type as embodied in the patents hereinbefore referred to.   The contract provided,. among other things, that any improvements made by the Thomas-Fordyce Company, or any of its employees, during the construction of the gin, should be the property of the General Cotton Securities Company, that company agreeing to pay to the manufacturing company $2,000, and to give it the preference of manufacturing at equal prices on all future orders for gins.

Plaintiffs are informed that sometime in November, 1910,. friction arose between defendant Hammond and other members, of the syndicate upon the one side, and defendant Sully on the other: Hammond and those siding with him,—namely, his son, Harris Hammond, and D. B. Atherton,—desiring to rid themselves of the syndicate obligation to pay into the treasury of the General Cotton Securities Company upon demand $1,600,000, which they had agreed to do, conceived the idea of making fraudulent changes in the minutes of said corporation, and the defendant Hammond, with the knowledge and consent of the defendant Miller and the defendant Bright, caused to be called an alleged meeting of the board of directors of the General Cotton Securities Company for 16th day of November, 1910, to be held at the office of the company in the city of Washington; and certain alleged notices were sent out to certain members of the board of directors and others, purporting to be signed by the secretary of the said corporation, namely, one Campbell, who was neither the secretary nor a stockholder of said corporation. In consequence of said notice a certain meeting was held in the office of the corporation in the Union Trust Building, city of Washington, on the 16th of November, 1910, at which time there were certain men present who purported to be acting and voting as members of the board, who were neither directors nor stockholders of said corporation, all of which was being done over the protest of the defendant Sully; and at said meeting there were certain resolutions purporting to be made, voted upon, and adopted as legal acts of the said board of directors of the said corporation, which in effect authorized and directed that there

be made certain physical changes in the minutes of the first meeting of the board of directors held on the 7th of January, 1910, so that by said physical changes it would be made to appear that the contract made by the General Cotton Securities Company with the defendant Sully in behalf of the syndicate, on the 7th of January, 1910, had never in fact been authorized by either the then board of directors or the then stockholders. None of the parties who participated in this unlawful and fraudulent action were either a member of the board of directors or a stockholder in said company on the 7th of January, 1910. These unlawful and fraudulent acts were done with the knowledge and consent of the defendant Bright, who, although not a director, was personally present at said meeting.

Immediately upon receipt of the foregoing information, these plaintiffs wrote a joint protest to the three voting trustees, demanding forthwith that they have called a special stockholders' meeting for the purpose of removing the then board of directors for malfeasance in office, and the election of a board that would honestly protect the interest of the stockholders as they were in duty bound to do under the voting trust agreement. Plaintiffs also wrote letters of protest to John Hays Hammond, president, and D. B. Atherton, treasurer of the General Cotton Securities Company, informing each of them of their beneficial interest in the voting-trust certificates issued to Miller, as voicing their protest against the unlawful and illegal action taken by the alleged board, and demanding that their interest be protected, and that the affairs of the company remain *in statu quo* until the voting trustees elect a new board of directors. And on the same day plaintiffs wrote to the then president of the National Cotton Improvement Company that the stock standing on its books in the name of John P. Miller was originally held by Miller for the joint interest of the three of them, and was no longer the property of the said Miller, but of the General Cotton Securities Company, demanding that no change would be made upon the books of said company of such stock until appropriate action had been taken by the General Cotton Securities Company, and inclosing copies of aforesaid letters to the voting trustees, and to

the officers of the General Cotton Securities Company. No replies were ever received to any of the letters, and plaintiffs were never able to secure any information of what actually took place at said meeting, although they frequently endeavored to do so from the defendants Hammond, Miller, and Bright.

Immediately upon receiving the communication from plaintiff, the defendant Sully advised them and their counsel that he, as one of the voting trustees, was perfectly willing to vote with either or both of the other voting trustees in demanding a special meeting of the stockholders for the purpose of removing the then board of directors for malfeasance. And on the same date defendant Sully wrote a letter to the defendant Bright, informing him that he had received a communication from plaintiffs, addressed to the voting trustees, and that he was ready and willing to request the president and secretary of the General Cotton Securities Company to call a meeting as demanded in plaintiff's letter. Said Sully prepared a request to be executed by the voting trustees and forwarded to the president and secretary, for the calling of a stockholders' meeting, and executed the same, and suggested in his communication to the defendant Bright that he also execute it and forward it to the defendant Hammond. That a letter was written by Sully to Hammond on the same day, wherein the defendant Sully expressed to the defendant Hammond his desire to comply with the request of the plaintiffs, and that he had prepared such a paper as met with the requirements, and requested the defendant Hammond to execute same and turn it over to defendant Bright. That neither the defendant Bright nor Hammond ever executed said paper, and no request was ever made by Hammond or Buell that a special meeting of the stockholders should be held.

That on the 16th of November, 1910, plaintiffs were advised that John R. Fordyce, president of the John R. Fordyce Manufacturing Company, manufactured another commercial gin along the lines of the Doremus patents with additional improvements to those that were heretofore referred to as having been assigned to the General Cotton Securities Company; and at the request of said Fordyce the defendant Sully and the plaintiff

Doremus on the 18th of November 1910, left the city for Little Rock, Arkansas, for the purpose of seeing the new gin in operation.

Defendants Hammond, Bright, and Miller were fully cognizant of the foregoing facts. Notwithstanding all of the above facts, the defendant Hammond, and those interested with him in the syndicate and allied with him in his endeavor to rid himself of his obligations to the General Cotton Securities Company, caused to be called a special meeting of the board of directors to be held at 71 Broadway, New York City, on the 23d day of November, 1910, at 10:30 A. M. And said defendant well knew at the time that there was no authority under the by-laws of the said company to hold such meeting of the board of directors, and each of the defendants Hammond, Miller, and Bright knew at the time that the call for said meeting was sent out that it would be impossible for defendant Sully to be present at said meeting at which they proposed to take steps, which, if legal, would jeopardize the interests of the plaintiffs. Further, that no notices were sent out to several of the other directors whom these defendants deemed were adverse to their interests. Notwithstanding the above facts a meeting was held according to plaintiff's information. That the said defendants, with the fraudulent intention of injuring the rights of these plaintiffs as the owners of the beneficial interests in three fourths of the $1,000,000 preferred, and three fourths of the $1,000,000 common stock of said company, did conspire to take such action that would, if legal, absolutely wipe out of existence the interests of these plaintiffs; at said meeting said defendants did agree to the passage of certain resolutions; namely, that the contract of December 29, 1909, between Miller and defendants Sully and Hammond should be annulled, and the contract made by the said company with the defendant Sully should be abrogated, surrendered, and held for naught, and that the stock issued to the defendant Sully, including that delivered by said Sully to defendant, shall all be canceled, and that all the stock in fact that had been issued by said company shall be wiped out of existence and the 96 per cent of the common, and the 96 per cent

of the preferred, stock of the National Cotton Improvement Company should be delivered to the defendant Miller, and that the patents for improvements to the gin assigned to the General Cotton Securities Company should be assigned to the defendant the National Cotton Improvement Company, or the defendant Miller on the payment of $169, and further did then vote the removal of the defendant Sully as vice-president. That at the time defendants Bright, Hammond, and Miller were proceeding in the manner hereinbefore stated to absolutely wreck the General Cotton Securities Company in violation of all their obligations to the stockholders, and particularly in regard to these plaintiffs, there was in the United States a representative of a British syndicate composed of London bankers, negotiating for the purchase of said patent rights and said patents from said company, all of which defendants knew. That previous to the unlawful conspiracy, the said Doremus patents and the said applications for improvements had, by demonstration, proved to be practical in every respect, and in fact a revolution in the process of ginning cotton, and are now thought by all interested in the industry to be of infinite value.

By the by-laws of the General Cotton Securities Company it is provided that the annual stockholders' meeting of said corporation should be held on the 2d Monday in January, and ten days' previous notice thereof should be given to all the stockholders of record. That the proper officers of the company wholly neglected to comply with the by-laws, and no request was ever made by the voting trustees that such a meeting be held, and up to the present time no meeting in fact has been held.

On information and belief, plaintiff avers that the 96 per cent of the stock of the National Cotton Improvement Company has been taken from the treasury of the General Cotton Securities Company and delivered to the defendant Miller, and said stock stands at the present time on the books of the National Cotton Improvement Company in the name of Miller, or Miller as trustee.

Plaintiffs are advised that the placing of the common-stock certificates by the defendant Miller with the defendants Sully

and Bright in escrow was without authority of law, and they are entitled to receive certificates of beneficial interest at this time from the defendants Sully and Bright. That they are entitled to have delivered to them by the voting trustees, the certificates of common stock represented by the trust certificates above mentioned, as said voting trust is not legally binding upon them in any way.

The prayers of the bill are that the court pass a decree directing defendants Sully and Bright to deliver to plaintiff the trust certificates of the numbers and names heretofore mentioned. That the defendants Hammond, Sully, and Bright, on the presentation of the said trust certificates of beneficial interest, deliver to said plaintiffs the common stock represented thereby. That the United States Trust Company be ordered to deliver to the plaintiff Doremus out of the stock in its possession 5,000 shares, and to the plaintiff Du Bois 2,500 shares.

That the National Cotton Improvement Company be enjoined from entering into any contract of any kind of description with anyone in relation to the Doremus patent, or any improvements thereon, or transferring upon its books any stock that now stands in the name of John P. Miller.

That the defendant Miller be enjoined from entering into any contract of any kind with anyone in relation to the stock now in his possession and standing on the books of the National Cotton Improvement Company in the name of John P. Miller, and that the court pass a mandatory order demanding that John P. Miller forthwith return to the lawful treasurer of the General Cotton Securities Company all the stock and certificates for shares of stock of the National Cotton Improvement Company received by him from the treasurer, and to assign or reassign any patents, or application for patents in relation to any improvements made upon the cotton gin conceived by the Thomas-Fordyce Manufacturing Company or John R. Fordyce.

March 17, 1911, the National Cotton Improvement Company appeared specially by its attorney and moved to quash the process served upon it, on the ground that at the time it was not doing business in the District of Columbia; that the suit does not

grow out of any contract made by said National Cotton Improvement Company entered into or to be performed in the District. This was accompanied by affidavit of Frank S. Bright, who stated that the company had surrendered its offices in the Union Trust Building on the 31st day of December, 1910, and he believes that the offices were rented to Sully on January 1, 1911, and that they have since been occupied by him. That said defendant company has had no office in the District of Columbia, and has done no business in said District, and is not now engaged in business here. Answering the motion to quash, plaintiffs allege that defendant maintains an office in the District at present, and it is in charge of its vice-president. The affidavit of Sully in support was to the effect that the company has continuously maintained, since 1909, offices in the Union Trust Building. That the National Cotton Improvement Company was incorporated under the laws of Maine for the purpose of acquiring what is known as the Doremus patents, and that it did subsequently acquire these patents from one John P. Miller, issuing to said Miller more than 90 per cent of its capital stock therefor. The only assets of the defendant company are the Doremus patents and certain office furniture. That all of its expenses have been borne by your affiant, or the defendant Hammond, and that all its business of every kind and character has been conducted in the District of Columbia, and all contracts in relation to its business were made in the District of Columbia.

The motion to quash was overruled without prejudice to defendant renewing the same after the coming in of its answer.

On March 23, 1911, the National Cotton Improvement Company filed a special answer and renewed its objection made to the jurisdiction in the former motion. On the same day an answer on behalf of the National Cotton Improvement Company was filed by D. J. Sully, first vice-president, in which all of the allegations of the bill were admitted. On March 24, Philip Walker, as attorney for said corporation, moved the court to strike said answer from the files on the ground that the said Sully was not vice-president of the corporation, and had no authority to represent the same. This was supported by an af-

fidavit of Frank S. Bright. Sully answered the bill in his own behalf on March 27th, substantially admitting the allegations therein. The United States Trust Company answered April 8, 1911, admitting the allegations of the bill relating to it. John P. Miller was not served with process and has made no appearance. John Hays Hammond answered May 29, 1911, and at great length. He substantially denied each and every allegation of the petition charging fraud and illegal action on his part.

Frank S. Bright answered May 24, 1911, also at great length, denying all allegations of the bill charging him with fraud, etc. Testimony was taken relating to the motion and exception of the National Cotton Improvement Company, to quash the subpœna and also to the allegations of the bill and denial thereof. November 27, 1911, a decree was entered dismissing the bill. No opinion was filed by the trial justice, though it appears from his brief oral statement taken down by a stenographer that in his opinion Sully was the instigator of the suit, and that he was made a party defendant to conceal the same, and to make use of whatever advantage the act afforded plaintiff by his position as defendant. That the answer filed by Sully for the National Cotton Improvement Company was made on an understanding with the plaintiffs that this answer should be filed, to subject to the court's jurisdiction a foreign party, and that it was not filed in good faith towards the company or the court; and was with the consciousness that Sully had no authority, either express or implied, to enter the appearance of the company or to answer for it; that the statements in the answer were not made in bona fide belief that it was either the duty, the power, or the right of Sully to make them.

*Mr. John C. Gitlings* and *Mr. Justin Morrill Chamberlin* for the appellants.

*Mr. R. Preston Shealey, Mr. Charles A. Towne, Mr. Philip Walker, Mr. William Woodward Baldwin,* and *Mr. Frank S. Bright* for the appellees.

*Mr. M. W. Sullivan* also for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the court:

Having given much space to a statement of what we understand to be the substantial allegations of the bill, we will not consume further time by a review of the testimony, but content ourselves with a statement of conclusions therefrom.

1. The court below was right in holding that no jurisdiction had been acquired of the National Cotton Improvement Company by the service of the process in this case. Under the interpretation that has been given to the statute authorizing service of process upon foreign corporations doing business in the District of Columbia, the said corporation had no office in said District, at the time of service, for the transaction of business, and was not doing business therein. *Ricketts* v. *Sun Printing & Pub. Asso.* 27 App. D. C. 222; *New York Continental Filtration Co.* v. *Karr,* 31 App. D. C. 459; *Ferguson Contracting Co.* v. *Coal & Coke R. Co.* 33 App. D. C. 159; *Mitchell Min. Co.* v. *Emig,* 35 App. D. C. 527; *Toledo Computing Scales Co.* v. *Miller,* 38 App. D. C. 237. In fact it was not doing business anywhere, in the ordinary sense of the term; its purpose having been accomplished by the issue of stock for the purchase of the Doremus United States patent, which formed the sole basis of its capitalization.

2. The answer for said corporation, purporting to have been filed by Daniel J. Sully, as vice-president, did not have the effect to bring the corporation before the court. The corporation had a president, as well as a vice president; and without pausing to consider whether Sully was actually its vice president at the time, it does not appear that he had any authority as such officer to enter its appearance, or answer for it in this suit. *Ambler* v. *Archer,* 1 App. D. C. 94–106. It does not seem that it was to its interest to appear voluntarily. On the contrary its answer would seem to have been filed by Sully in the interest of the plaintiffs. The entire record of the case furnishes an example of corporate formation, stock watering, and manipulation that is made possible by the character of the corporation laws in force

in many of the States, as well as by the absence of restraining legislation in the District of Columbia.

3. Assuming, what may reasonably be inferred from the circumstances, in evidence, that Sully stimulated this litigation, desiring thereby to accomplish some purposes of his own, it does not follow that plaintiffs shall lose any substantial rights they may be entitled to under the allegations of their bill. It remains to be inquired what these are, if any, and if they may be adjudicated in the present proceeding with the parties properly before the court. So far as inquiry into the corporate proceedings of the General Cotton Securities Company, looking to the correction of its minutes, and the legality of its election of Directors and other officers, is involved, that corporation is a necessary party. But being a foreign corporation, if it were a party the courts of this jurisdiction would have no power to control its internal affairs and the administration of its corporate functions. *Clark* v. *Mutual Reserve Fund Life Asso.* 14 App. D. C. 154–175, 43 L.R.A. 390; *Barley* v. *Gittings,* 15 App. D. C. 427–443. It does not appear that the administration of the internal corporate affairs of the National Cotton Improvement Company is necessarily involved, nor would it be a necessary party to a mere determination of the right to the ownership of its capital stock as between rival claimants thereof, if such were the object of this suit.

4. The evidence shows that Miller has paid the plaintiffs the consideration named in the contract with them for the purchase of the United States patent of Doremus, which patent was assigned to the National Cotton Improvement Company as the consideration for the issue of its capital stock. Ninety-six per cent of this stock was subsequently transferred to the General Cotton Securities Company, which, representing the ownership of the Doremus patent, made the same the basis of its enormous capitalization, otherwise unrepresented by value. The consideration of the purchase of the stock of the National Cotton Improvement Company was the issue to Sully of $3,000,000 preferred and $3,000,000 common stock of the General Cotton Securities Company, upon his promise to transfer and deliver

the Cotton Improvement Company's stock aforesaid, and to pay also to the General Cotton Securities Company the sum of $1,600,000 from time to time upon its demand, without interest, and at such terms and in such amounts as said company may nominate. A syndicate consisting of Sully, John Hays Hammond, D. B. Atherton, Mont D. Rogers, and Harris Hammond was formed by agreement between them, which recites that Sully had acquired the $3,000,000 preferred and the $3,000,000 common stock of the General Cotton Securities Company aforesaid, and desired to enter into a syndicate or joint venture with the other signers to sell the same. The syndicate agreed to use its best endeavors to sell the $3,000,000 preferred and $750,000 of the common stock subject to a voting trust. The syndicate was to divide all profits made in the sale of stock, after deducting the sum of $100,000 to reimburse John Hays Hammond for money advanced, and to pay expenses. Sully was constituted syndicate manager and authorized to select a trust company. It does not appear that the syndicate assumed personal responsibility for the contract with Sully, but the amount of money promised by him to the General Cotton Securities Company was necessarily to be deducted from the amount realized from the sale of its stock; but for the purposes of this case that fact is immaterial, because the corporation had accepted the personal contract of Sully as part of the consideration for the issue of $6,000,000 of stock.

The capital stock of the National Cotton Improvement Company had been obtained for delivery to the General Cotton Securities Company under an agreement entered into between John P. Miller, Sully, and John Hays Hammond on December 28, 1909. Miller agreed to transfer and deliver the stock to Sully and Hammond, and to receive in payment therefor $37,500 in cash and $1,000,000 preferred and $1,000,000 common stock of the new corporation undertaken to be formed by them; the common stock to be delivered to the voting trust, certificates of beneficial interest to be issued to the voting trustees. The $1,000,000 common stock was to be sold so as to net Miller $400,000. Sully and Hammond were to use their best

endeavors to sell $2,000,000 preferred stock of the new corporation so as to net to the treasury of the same $1,600,000; they were to be under no personal liability other than to pay Miller said sum of $37,500, to deliver to him the stock aforesaid, and to use their best efforts to sell the stock as agreed. Certificates for the common stock were issued and deposited with the United States Trust Company, and a certificate issued to Miller showing his beneficial ownership. February 3, 1910, Miller made a declaration of trust declaring Doremus the beneficial owner of 4,600 shares; Du Bois the owner of 2,275; Bright the owner of 500; and William Muerling the owner of 400. There were some contracts between Miller and Doremus respecting the foreign patents to be applied for, which it is unnecessary to detail. The foregoing shares are in the possession of the United States Trust Company. The bill prays a decree compelling said trust company to deliver out of the 10,000 shares of preferred stock in its possession, 5,000 shares to plaintiff Doremus and 2,500 shares to plaintiff Du Bois; also directing Sully, Bright, and Hammond, trustees, to deliver the certificates of ownership of the common stock specified in the Miller declaration of trust. Other relief prayed is by way of injunction against the entering into any contract by the National Cotton Improvement Company relating to the Doremus patents, and from transferring any of its stock in the name of Miller on its books. It is prayed that Miller be restrained from entering into any contract relating to the stock of the National Cotton Improvement Company, and commanded to return the same to the General Cotton Securities Company, and to assign. or reassign any patents or applications for patents by the Fordyce Company to the said Securities Company.

Whatever rights the plaintiffs may have are narrowed to the ownership of the shares of the General Cotton Securities Company held in trust by the United States Trust Company, as against John P. Miller. Said Miller is a necessary party to this determination; and whether as against him the plaintiffs are entitled to a decree determining the question of ownership is a question that cannot be considered because Miller is not

before the court. It was error to dismiss the bill because of the belief that Sully had instigated it against the other defendants. The decree will therefore be reversed and the cause remanded, whereupon the plaintiffs may have it retained for a reasonable time for an opportunity to obtain service of process upon John P. Miller, and to amend their bill if so advised; otherwise it may be dismissed without prejudice. The costs in this court will be taxed one-half against the plaintiffs and one-half against the defendants jointly. It is so ordered.          *Reversed.*

A motion by the appellants for a rehearing was denied, Mr. Chief Justice SHEPARD delivering the opinion of the court:

Plaintiffs' motion for rehearing is without merit. Their contention is that Miller is not a necessary party to this case, because "all parties, especially Miller, concede that such ownership is not disputed,"—meaning the ownership of the shares of the General Cotton Securities Company issued to Miller by the voting trustees of that company, and held in trust by the United States Trust Company.

Whatever may be the concession regarding the ownership of this stock by the other defendants, who moreover have no interest therein, there is and could be no such concession by Miller, who was never a party to the case. It may be that he will make this concession when made a party and called upon to answer, but he must certainly be made a party before his interest can be affected by a decree declaring the title to the stock.

As a part of the motion there is attached what purports to be an answer of Miller filed in another case pending in the equity court, in which it seems that the title to said stock is in some way involved. This case must be tried upon its own record, and nothing can be introduced from the record of another case. We have, therefore, not considered the copy of the answer in the other case referred to.

The motion is denied.